United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:20-cv-301

Alonzo Hardeman, *Plaintiff*,

v.

United States of America
on Behalf of Coastal Health and Wellness,
a Federally Supported Health Center, *Defendant*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court is the defendant's motion for summary judgment. Dkt. 21. The court grants the motion.

## I.  Background

The plaintiff, Alonzo Hardeman, was a patient of Coastal Health and Wellness, a federally supported health center with two clinic locations, one in Texas City and another in Galveston. *Id.* ¶ 2. In 2015, the Joint Commission on Accreditation of Health Care Organizations inspected Coastal's clinics. Dkt. 21-2 at 4. The Joint Commission identified no deficient

"infection[-]control issues" at that time and Coastal received "full accreditation." *Id.* But in February 2018, the Joint Commission conducted another accreditation visit at Coastal's clinics. Dkt. 21 at 2:4–5. Coastal failed this inspection. Dkt. 1 ¶ 4. The Joint Commission found that breaches in Coastal's infection-control practices had potentially exposed patients to blood-borne viruses. *Id.* This prompted an investigation by the Galveston County Local Health Authority, Dr. Philip Keiser. Dkt. 26 ¶ 1.

Following his investigation, Dr. Keiser ordered that "any patients who received invasive procedures between March 1, 2015, and February 3, 2018, be notified to come in for testing for blood[-]borne viruses." Dkt. 21 at 3:7. The Galveston County Health District mailed a letter to former Coastal patients advising them that "[a]lthough to date, no specific infections have been linked to the Coastal Health & Wellness clinics, [the Galveston County Health District] [is] recommending you get tested for Hepatitis B, Hepatitis C, and HIV as a precaution." *Id.*

On June 20, 25, and 26, 2015, Hardeman had received dental treatment at Coastal. Dkt. 21 at 2:1–2. After receiving the Health District's letter, Hardeman was tested and learned "that he had been infected with Hepatitis C." Dkt. 1 ¶ 6. Hardeman alleges he was not infected with hepatitis C before the treatment he received at Coastal. *Id.* He filed this lawsuit in

September 2020. The defendant has moved for summary judgment.

## II. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The movant bears the burden of presenting the basis for the motion and the elements of the causes of action on which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

The burden of surviving summary judgment is not satisfied "with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a scintilla of evidence.'" *Patty v. United States*, No. H-13-3173, 2015 WL 1893584 at *4

(S.D. Tex. April 27, 2015) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. Analysis

Hardeman brings this action under the Federal Tort Claims Act. 28 U.S.C. § 2671, *et. seq.* But because his substantive claims concern medical malpractice, "[s]tate law controls." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Under Texas medical-malpractice law, Hardeman "must prove four elements: (1) a duty to comply with a specific standard of care; (2) breach of the standard of care; (3) an injury; and (4) a causal connection between the breach and the injury." *Ledermann v. United States*, Nos. 3:19-cv-280/285/312, 2021 WL 3033390, at *2 (S.D. Tex. July 19, 2021) (citing *Coronel v. Providence Imaging Consultants, P.A.*, 484 S.W.3d 635, 638 (Tex. App.—El Paso 2015, pet. denied)).

In *Ledermann*, a case very similar to this one, three plaintiffs sued the United States claiming that their visits to Coastal caused their hepatitis C infections. *Ledermann*, 2021 WL 3033390, at *1. In deciding for the defendant following a bench trial, this court noted that all three plaintiffs presented with common risk factors for hepatitis C, including intravenous

drug use, contraction of sexually transmitted diseases, surgeries, and piercings. *Id.* at *2. Additionally, the court noted the time gaps between each plaintiff's treatment at Coastal and the Joint Commission's fateful inspection varied from one year and ten months, one year and six months, and two years and two months. *Id.* The plaintiffs relied exclusively on the Joint Commission's 2018 inspection and presented no evidence of the conditions at Coastal at the specific times they visited. *Id.* Because the plaintiffs "offered just 'a mere suspicion of causation, and that is not enough,'" the court ruled that they take nothing. *Id.* (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010)).

Like the plaintiffs in *Ledermann*, Hardeman's medical records evince a host of risk factors for hepatitis C: "IV drug abuse, blood transfusions, surgery, tattoos," etc. Dkt. 21, Ex. G, at 2. Also, Coastal's failed inspection occurred two years and eight months after Hardeman's treatment, which occurred much closer in time to the 2015 inspection which Coastal passed. Hardeman has offered no evidence that Coastal's infection-control practices were deficient when he was treated there in 2015.

In Texas law, expert testimony is necessary to establish causation. *Jelinek*, 328 S.W.3d at 533. Hardeman relies on the report of his expert, Dr. Harry F. Hull. Dkt. 21, Ex. J. Dr. Hull opines: "As Mr. Hardeman has no

known exposures to hepatitis C, other than his dental treatment at Coastal Health and Wellness, it is more likely than not that he was exposed to hepatitis C virus from improperly sterilized dental implements at Coastal Health and Wellness." *Id.* at 3–4.

Undergirding this opinion is Dr. Hull's understanding that Hardeman "reports no risk factors for hepatitis C other than" the dental treatment at Coastal and that "[h]e has not used intravenous, recreational drugs." *Id.* at 2. But those assumptions are contradicted by evidence in Hardeman's medical records of a collection of risk factors—including "IV drug abuse." Dkt. 21-2 at 2. Indeed, Dr. Hull notes in his report that "[t]he most common route of spread [of hepatitis C] in the United States is among intravenous drug abusers by sharing needles." Dkt. 21, Ex. J, at 2. Moreover, Dr. Hull fails to address the fact that Hardeman's treatment at Coastal was much closer in time to the inspection it passed in 2015 than to the one it failed in 2018.

"It is not enough for an expert to simply opine that the defendant's negligence caused the plaintiff's injury." *Jelinek*, 328 S.W.3d at 536; *see also Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.").

> When the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that "in medical probability" the injury was caused by the defendant's negligence. The expert must explain why the

> inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts. Thus, when the facts support several possible conclusions, only some of which establish that the defendant's negligence caused the plaintiff's injury, the expert must explain to the fact finder why those conclusions are superior based on verifiable medical evidence, not simply the expert's opinion.

*Jelinek*, 328 S.W.3d at 536.

Hardeman's expert states in his own report that intravenous drug abuse is "the most common route of spread" of hepatitis C. Then, because he assumes incorrectly that there is no evidence of IV drug abuse by the plaintiff, he jumps to the conclusion that deficient infection-control practices—uncovered over two and a half years after Hardeman's treatment—must be to blame. "'The proof must establish causal connection beyond the point of conjecture.'" *Bowles v. Bourdon*, 219 S.W.2d 779, 785, 148 Tex. 1, 10 (1949) (quoting *Ramberg v. Morgan*, 218 N.W. 492, 498 (Ia. 1928). Here, it does not.

Not only has Hardeman failed to raise a genuine issue of material fact on the element of causation, but the defendant has offered convincing evidence to disprove it. In his report, the defendant's expert, Dr. Richard J. Hamill, opines that "it is not medically likely or possible" that Hardeman was infected with hepatitis C from his treatment at Coastal. Dkt. 21, Ex. G, at 4. Among the reasons he gives for his opinion are the presence of other risk

factors, research showing that hepatitis C transmission in the dental-clinic setting is extremely rare, and the fact that Hardeman's treatment was so much closer in time to the passed inspection than to the failed one. *Id.*

*   *   *

The court grants the defendant's motion for summary judgment. Dkt. 21. The plaintiff's claims are dismissed with prejudice. Final judgment will be entered separately.

Signed on Galveston Island this 30th day of September, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE